UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GREGORY G., *et al.*, <br> on behalf of United States, <br><br> *Plaintiffs*, <br><br> v. <br><br> HOUSTON INDEPENDENT SCHOOL DISTRICT, <br><br> *Defendant*. | § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION H-14-2768 <br> § <br> § <br> § <br> § |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Houston Independent School District's ("HISD") motion to dismiss Gregory G., Michelle G., Chad B., and Jill B., collectively "Relators," first amended complaint. Dkt. 19. The court has considered the motion, response, reply, and applicable law, and the court finds that HISD's motion to dismiss should be GRANTED and the claims should be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

This case is a False Claims Act ("FCA") action, filed by Relators, alleging that HISD defrauded Medicaid. Dkt. 12. Relators allege that HISD submitted fraudulent claims on behalf of special education students under the Texas School Health and Related Services ("SHARS") program. Dkt. 12 at 2. SHARS coordinates with the state's Medicaid agency, the Texas Health and Human Services Commission, to provide Medicaid reimbursement for "health and related services that are determined to be medically necessary and reasonable to ensure a Medicaid-enrolled student with a disability receives a free appropriate public education." Dkt. 19 at 5. On September 28, 2014, Relators filed their original complaint alleging that, under the SHARS program, HISD tailored

special education programs to provide medically unnecessary services for the purpose of maximizing Medicaid billing. Dkts. 1, 12. On December 5, 2015, Relators amended their original complaint to add allegations that HISD billed Medicaid for services not provided at all. Dkt. 12 at 5–7.

Relators allege that this scheme defrauded Medicaid of millions of dollars. Dkt. 12 at 6. Relators also allege that this scheme deprived Garrett G., Blake B., and other children their legally-entitled free and appropriate public education by tailoring special education programs to maximize billable services under Medicaid rather than based on educational needs. Dkt. 12 at 4. The U.S. government has declined to intervene in this *qui tam* action. Dkt. 5.

Relators Gregory G. and Michelle G. are the parents of Garrett G., a child with autism who was enrolled in HISD and received special education services "until September 2012 and then again for a brief period in September, 2013." Dkt. 12 at 1. Relators claim Garrett G. made little or no educational progress while enrolled in HISD. *Id.* A Hearing Officer also ruled that HISD failed to provide Garrett G. a free and appropriate public education required by the Individuals with Disabilities Education Act. *Id.* Relators allege that HISD's actions were a factor in Garrett G.'s poor educational progress because HISD tailored Garrett G.'s special education program to fraudulently bill for medically unnecessary services rather than for Garrett G.'s educational needs. *Id*.

Relators Chad B. and Jill B. are the parents of Blake B., a teenager with an autism spectrum disability who was enrolled in HISD and received special education services from 2005 to 2012. *Id.* at 5. Relators allege that HISD provided special education to Blake B. based on a characterization that he had an emotional disturbance coupled with Bipolar Disorder and ADHD-Severe until September 2012, when HISD added the autism spectrum disorder. *Id.* Relators claim that Blake B. was moved to a Behavior Support Classroom in 2007 with the expectation that he would transition

out in approximately six months.[1]  *Id*.  However, Blake B. was kept in the classroom for four years and his education failed to advance beyond the fourth grade level he had achieved when he was originally placed in the classroom.  *Id*.  Relators claim keeping Blake B. in a Behavior Support Classroom was unnecessary because Blake B. did not demonstrate the violent behaviors that justify this placement.  *Id.*  Relators claim HISD was motivated to keep Blake B. in the Behavior Support Classroom so that it could continue to bill the federal government for unspecified medically unnecessary services provided in that classroom.  *Id.* at 5–6.  Blake B.'s parents withdrew him from HISD in 2012.  *Id.* at 6.

Finally, Relators allege at least one special education teacher received instructions from HISD at Jeff Davis and Madison High Schools to bill for toileting and other special education services that were never provided.  *Id.* at 7.  Both Relators and HISD agree that this specific example was publically reported in the media prior to being included in the first amended complaint.  Dkt. 19 at 19–22; Dkt. 20 at 9.  HISD, in its motion to dismiss, argues that this portion of the claim should be barred by FCA's public disclosure doctrine.  Dkt. 19 at 22.  Relators argue that this allegation is just another example of a scheme they initially disclosed in their original complaint.  Dkt. 20 at 9.

Finally, Relators allege that HISD billed Medicaid for services to Garret G., Blake B., and other students without parental consent.  Dkt. 12 at 2.  Relators contend that HISD's failure to seek parental consent removed one "check" to prevent HISD from filing fraudulent claims under the SHARS program.  *Id*.; Dkt. 20 at 6.

---

[1] Relators' allege that Blake B's original placement in the Behavior Support Classroom occurred when "HISD personnel informed Blake B.'s parents that Blake B. required placement in a Behavior Support Classroom due to elopements out of the classroom, despite the fact that he never injured or threatened injury either to himself or others." Dkt. 12 at 5.

Relators claim HISD's standard practice is to tailor special education programs to maximize Medicaid billing for medically unnecessary or unprovided services. Dkt. 12 at 7.

HISD argues in its motion to dismiss the first amended complaint that failing to receive parental consent is not a material falsification under the FCA, that the first amended complaint is not pled with the specificity required under Federal Rule of Civil Procedure 9(b), and that the amendments Relators added to the first amended complaint are barred as a public disclosure. Dkt. 19.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.

**B.     Rule 9(b) Standard**

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). The Fifth Circuit observed: "In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology.'" *Id*. at 185 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.1997)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Id.* Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit strictly interprets Rule 9(b), "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.*" Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *U.S. ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 625 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 984 (2016) (quoting *U.S. ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir. 2010)). However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 185. Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without

including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.* at 188 (internal quotation omitted).

### III. ANALYSIS

HISD moves to dismiss the first amended complaint because the lack of a parental consent for the Medicaid bills is not material to a false claim and because Relators failed to plead fraud with the required particularity under Federal Rule of Civil Procedure 9(b). Dkt. 19 at 6–7. The analysis will first address the materiality of parental consent and then determine if the Relators sufficiently pled their fraud claim under Rule 9(b).

**A.     Materiality under the FCA**

Any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable under the FCA. 31 U.S.C. § 3729(a)(1)(A)–(B). To state a claim under the FCA, a plaintiff must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government. *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir.2009).

In its motion to dismiss, HISD argues the false "statement" alleged by Relators is HISD's submission of SHARS claims for services performed without the requisite parental consent, which is not material to the fraud. Dkt. 19 at 10–11. In their response, Relators clarify their position on HISD's failure to procure parental consent noting that "this failure does not itself constitute the false claim that gives rise to the complaint." Dkt. 20 at 6. Rather, Relators argue that failing to procure parental consent removes a "potential check against fraudulent billing activity." *Id*. Relators clarify that their FCA claim is based on the allegation that "HISD made false statements regarding the

services it provided or failed to provide special education students its tutelage and the necessity of those services" Dkt. 20 at 5. Therefore, the court will consider Relators' allegation that HISD fraudulently sought reimbursement from Medicaid for medical unnecessary services as the basis for their FCA action, and consider the alleged failure to acquire parental consent as an act that supports that allegation. The allegation that HISD fraudulently sought reimbursements for medically unnecessary services is material to the claim, so HISD's motion to dismiss on this ground is DENIED.

**B.    Rule 9(b)**

The first amended complaint alleges that HISD billed Medicaid for medically unnecessary services or services not rendered at all. Dkt 12. HISD argues that the first amended complaint "failed entirely to plead the 'who' and 'when' of the fraud, and does not sufficiently plead the 'what' or 'how' to satisfy the requirements of Federal Rule of Civil Procedure 9(b)." Dkt. 19 at 10.

First, in addressing the "what" and "how" of a fraud, the Relator must plead "what was false about the claims or how they were false." *U.S. ex rel. Gage v. Davis S.R. Aviation*, L.L.C., 623 F. App'x 622, 625 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 984 (2016). "[P]laintiff does not necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted . . . [I]f it cannot allege the details of an actually submitted false claim, it may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (further stating the required elements of a claim are "context-specific"). "While allegations may be based upon information and belief, 'the complaint must set forth the factual basis for such belief.'" *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (quoting a *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). The Fifth Circuit warns that "this exception 'must not be

mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 n.67 (5th Cir. 2002)).

The facts offered by Relators to form the basis of their beliefs that establish the "what" and "how" of the fraud are, in summary, that Blake B. was kept in a Behavioral Support Classroom without demonstrating violent tendencies, that Garrett G. was denied a free and appropriate public education, and that unspecified medically unnecessary services were provided to the two students and billed without parental consent. Dkts. 12 at 4–6, 20 at 8–9. Additionally, the Relators provide information already reported in the media that special education teachers elsewhere in the school district billed for medical services that were not provided. Dkt. 12 at 7. Relators explain in their response that this additional example was an "elucidation" provided for the purpose of "confirming the existence and character of the fraudulent scheme outlined in their Original Complaint." Dkt. 20 at 10.

As part of the first amended complaint, Relators allege the basis for their belief that HISD was engaged in fraudulent activity is that services provided to Blake B. and Garrett G. were medically unnecessary. Dkt. 12 at 5–6. HISD argues that Relators' failure to plead "what specific services were allegedly billed," means the first amended complaint is based on a conclusory allegation rather than a factual basis for their belief. Dkt. 19 at 17. In a comparable *qui tam* case regarding an alleged aircraft parts fraud, the relators described the parts as "non-conforming" and "unapproved," and the court dismissed these as conclusory terms lacking the necessary details in how the parts failed to comply. *See U.S. ex rel. Gage,* 623 F. App'x at 627. Similarly, Relators here claim that services provided to special education students were "medically unnecessary" without specifying why the services are medically unnecessary or even providing an example of a service that was provided.

8

Therefore, in this context, the court finds that "medically unnecessary" is a conclusory statement rather than a factual basis for the "what" and "how" of the 9(b) pleading.

Relators also argue that HISD's failure to procure parental consent provides a factual basis for their belief. Dkt 20 at 8. Relators explain that "[h]aving failed to obtain parental consent . . . HISD could more easily submit bills for unnecessary services or services not provided at all." *Id.* HISD replies that "it is pure speculation . . . [that this is] somehow evidence that HISD knowingly provided and billed for medically unnecessary services and/or billed for services not provided." Dkt 21 at 5. The court concludes that the failure to comply with parental consent requirements, the poor educational outcomes of Blake B. and Garrett G., and only the supporting conclusory statements are an insufficient factual basis to allow the court to make a reasonable inference to establish the "how" and "what" of the alleged fraud in this context.

In addressing the "when" of a fraud, allegations must be more specific than a course of years. *See, e.g., Gage,* 623 F. App'x at 627 (5th Cir. 2015) (concluding that "[Relator] Gage alleges only that defendants submitted nearly $4 million of false invoices to the government between 2009 and 2011. This range is not specific enough to comply with Rule 9(b)"); *United States ex rel. Hebert v. Dizney*, 295 Fed. App'x. 717, 722–23 (5th Cir. 2008) (allegations that defendants routinely submitted bills over the course of seven years were not sufficiently specific under Rule 9(b)) Here, Relators allege the fraud occurred over a course of years spanning from at least 2005 to 2013. Dkts. 12 at 1, 20 at 9 ("Relators allege that this fraudulent activity occurred throughout their tenure at HISD.").

Relators respond to this defect by claiming they are alleging a broad and far-reaching scheme, so that they can base their claim on specific examples of false claims pursuant to that scheme. Dkt. 20 at 8. Relators support this argument by citing to *U.S. ex rel. Rigsby v. State Farm Fire & Casualty Co.*, 794 F.3d 457, 467 n.6 (5th Cir. 2015) ("[a]dditionally, at least one other circuit permits

discovery on 'the entire fraudulent scheme' where a relator 'pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme.'" (citing to *U.S. ex rel. Bledsoe v. Cmty. Health Sys. Inc.*, 501 F.3d 493, 510 (6th Cir.2007))). However, even relying on the specific examples of Garrett G. and Blake B., Relators do not allege "when" the false claim occurred with regard to these students with any particularity other than the course of years each student was enrolled in HISD. Therefore, the court concludes that the first amended complaint does not contain the necessary details to establish the "when" required by Rule 9(b).

In addressing the "who" of the fraudulent scheme, "the identity of the person making the misrepresentation must be stated in the complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). The Relators did not offer the identity of any individual person making a misrepresentation or having knowledge of HISD's alleged misrepresentations. Dkt. 20 at 7. HISD argues that it should not be held liable for the "collective knowledge" of multiple individuals, without alleging a specific individual who submitted a false claim. Dkt. 19 at 12 (citing to *U.S. ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2015 WL 5178074, at *29 (S.D. Tex. Sept. 3, 2015)). HISD also argues that by not identifying any specific individuals, Relators fail to allege the requisite scienter necessary to state a claim under the FCA. Dkt. 19 at 11–12. Relators counter that it is acceptable to allege "fraud on the part of a corporate entity without alleging the specific employee responsible for that fraud." Dkt. 20 at 7 (citing to *U.S. ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 506 (6th Cir. 2007)).

It is acceptable to plead schemes generally, as long as specific or representative examples of entities involved in the scheme are also offered. *See, e.g., Rigsby*, 794 F.3d at 467 n.6; *U.S. ex rel. Bennett v. Boston Sci. Corp.*, No. CIV.A. H-07-2467, 2011 WL 1231577, at *16 (S.D. Tex. Mar. 31,

2011) (internal citations omitted) (declining to relax a Rule 9(b) pleading standard because "the relator in the present case has not, however, alleged a representative sample or even an instance of submission . . . [n]or has the relator alleged that a specific physician or hospital submitted a false claim."). Ultimately, Relators fail to provide even a representative example of an individual involved in the fraudulent scheme as part of a specific or representative example, the court concludes that the first amended complaint does not contain the "who" required by 9(b).

In summary, Relators fail to adequately address the how, what, when, or who of the alleged fraudulent scheme with at least enough details to allow an inference that fraud occurred. Relators failed to provide a sufficient factual basis of their allegations. Even considering the allegations that were provided in the first amended complaint in a "context specific" light, not enough particularity was alleged to allow the court to make a reasonable inference that a fraud occurred. Therefore, the court concludes that Relators have not met the pleading standards of Rule 9(b), and HISD's motion to dismiss is GRANTED.

C.     **Relaxed Pleading Standard Under Rule 9(b)**

Relators argue in their response that they are entitled to a relaxed application of Rule (9)(b) in lieu of the missing particulars of the alleged fraudulent scheme because (1) the information is only available to HISD, and (2) they were still able to allege specific examples of an overarching fraudulent scheme. Dkt. 20 at 7. The pleading requirements of Rule 9(b) may be relaxed when facts relating to fraud are "peculiarly within the perpetrator's knowledge." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003*)* (quoting *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 307 (5th Cir. 1999), *abrogated on other grounds by U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 129 S. Ct. 2230 (2009)). In a *qui tam* suit, the Relators must allege that they

do not have access to the particular facts relating to the fraud, or the court will not relax the requirements of Rule 9(b). *Doe*, 343 F.3d at 330 (5th Cir. 2003).

First, the Relators argue for relaxed requirements under Rule 9(b) because "information concerning the particulars of HISD's fraudulent billing activity lies entirely in the possession of HISD rather than in the possession of Relators." Dkt. 20 at 7. However, Relators are not relieved of the Rule 9(b) requirements to plead facts "where the documents containing the requisite information are in the possession of, and presumably available from, other sources." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.,* 553 F.3d 869, 873 n.6 (5th Cir.2008) (citing Doe, 343 F.3d at 330); *see also Russell*, 193 F.3d at 308 (5th Cir.1999) (declining to relax the Rule 9(b) standard where a government entity possessed documents containing requisite information)*; U.S. ex rel. Polansky v. Pfizer, Inc*., No. 04-CV-0704 (ERK), 2009 WL 1456582, at *8 (E.D.N.Y. May 22, 2009) ("The rationale for reducing the pleading burden when information is in the defendant's possession appears to spring from the fact that an adverse party would not willingly divulge incriminating information. Where the information needed to fill out the complaint is in the hands of third parties, rather than defendants, this rationale for reducing the pleading burden does not apply."). For example, the Fifth Circuit held, in a suit against a corporate defendant, that if the government, as a third party, also had knowledge of the needed information to form the complaint, it was not particularly in the hands of the defendants. *Gage*, 623 F. App'x at 627 (holding that the details of a classified contract are "not peculiarly within [Defendant] Northrop's knowledge because the USAF, as Northrop's counterparty, presumably also has knowledge of the contract"); *see also Bennett,* 2011 WL 1231577, at *16 (holding a relaxed pleading standard is not necessary because even though "[t]he defendants note that it does not have billing or reimbursement information; doctors, hospitals, and government agencies do").

Here, at least some of the information to provide a factual basis for HISD's alleged fraud should be available from a third party, such as Medicaid itself. Also, as HISD points out in its reply, Relators are legally entitled to participate in HISD Individual Education Plan meetings and receive copies of their children's educational records. Dkt. 21 at 7. Relators make no allegation that HISD is refusing to cooperate or disclose this information about Blake B. or Garrett G. The court concludes that the first amended complaint is deficient at least in regard to the details that are available to the Relators from third parties or freely available in the student's educational records.

Second, Relators argue that because this is an "overarching" scheme, the specific examples provided are sufficient to establish the fraud, implying that discovery can be used to cure any defects in the pleading. Dkt. 20 at 7–8. The Fifth Circuit has observed, "[a]dditionally, at least one other circuit permits discovery on the entire fraudulent scheme where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government September 27, 2016 pursuant to that scheme." *Rigsby*, 794 F.3d at 480 (quoting *U.S. ex rel. Bledsoe v. CmtyHealth Sys. Inc.*, 501 F.3d 493, 510 (6th Cir.2007)). But, the Fifth Circuit also cautions: "In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Grubbs,* 565 F.3d at 185.[2]

However, even if the Relators were entitled to a relaxed pleading standard allowing pleading on "information and belief," the Relators must also state the factual basis for their beliefs. *Doe*, 343 F.3d at 329. For example, in *Doe* v. *Dow Chem. Co.*, Doe failed to provide any factual basis for his

---

[2] The Fifth Circuit further notes: "Discovery can be pointed and efficient, with a summary judgment following on the heels of the complaint if billing records discredit the complaint's particularized allegations. That is the balance Rule 9(b) attempts to strike. And it works best when access to discovery does not inevitably include all discovery's powers but is tailored by the district court to the case at hand. And the detail must be sufficient to allow this tailoring. Rule 9(b) should not be made to shoulder all the burden of policing abusive discovery. Its balance draws upon the vigilant hand of the district court judge." *Grubbs,* 565 F.3d 180, 190.

belief that there were "illegal discharges at the Plaquemine facility, that certain parties knew of these discharges and their illegality, and that those parties falsified reports to the government to prevent detection." *Id*. Because of these deficiencies, the court in *Doe* did not allow a relaxed pleading standard under Rule 9(b). *Id*. Like in *Doe*, even though Relators offer Garrett G. and Blake B. as specific examples, they do not provide any factual basis to support their belief that false claims were filed on the students' behalf. A complete example would include at least some further details, such as what medical service was provided, when it was provided, when and who billed the procedure, and why that service was medically unnecessary. Currently, the allegations only include the existence of these two students and their poor educational outcomes, accompanied by conclusory statements. The first amended complaint does not provide enough factual basis for the court to infer these poor educational outcomes were caused by HISD's alleged fraudulent scheme without providing the factual basis to support that conclusion. Without the specific examples, the court concludes that the allegations provided are inadequate to provide a factual basis for Relators' belief. Therefore, without examples of specific false claims pursuant to the alleged scheme, to allow an appropriately tailored discovery, it is not appropriate to open the door to discovery as a tool to remedy the defects in the first amended complaint.

      Accordingly, because Relators failed to plead with specificity a single representative example, failed to provide factual basis for their allegations based on information and belief, or support these examples with information that is not particularly in the hands of the defendants, the court concludes that Relators are not entitled to relaxation of the 9(b) pleading standard. Therefore, the motion to

dismiss is GRANTED because the first amended complaint did not adequately plead the alleged fraud under Rule 9(b).[3]

## IV. Conclusion

HISD's motion to dismiss (Dkt. 19) is GRANTED and the claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on September 30, 2016.

_____
Gray H. Miller
United States District Judge

---

[3] Because the court finds that Relators fail to state a claim under Rule 9(b), the court need not address HISD's argument that the allegations added to the first amended complaint are barred are under the FCA's public disclosure provision in 31 U.S.C. § 3720(e)(4)(A).